### In re NEIDECKER et al.

### No. 272.

Circuit Court of Appeals, Second Circuit.

Feb. 10, 1936.

Coudert Brothers, of New York City (Milton P. Kupfer, Frederic C. Bellinger, and Eli S. Silberfeld, all of New York City, of counsel), for appellants.

Herbert Stern, of New York City, for appellees petitioning creditors.

Hines, Rearick, Dorr & Hammond, of New York City (Charles A. Marshall and G. Gilbert Palmer, both of New York City, of counsel), for appellee Tuck.

White & Case, of New York City (William St. John Tozer, of New York City, of counsel), for creditors.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

On December 7, 1935, an order of adjudication was entered in the court below adjudging bankrupt Bertrand Coles Neidecker individually and as copartner trading under the name of Neidecker et Cie (a French partnership) and said Bertrand Coles Neidecker and his brother George W. Neidecker as copartners trading under the name of Neidecker & Co. (an English partnership). They have appealed on the ground that the court was without jurisdiction. The issue is of narrow compass, for it is conceded that the petitioning creditors were properly qualified and that the bankrupts had property within the jurisdiction of the District Court and committed an act of bankruptcy within the requisite period prior to the filing of the creditors' petition on August 6, 1935. The dispute relates to the residence and domicile of the bankrupts and to the effect of a "jugement declaratif de faillite" entered on July 23, 1935, by the Tribunal of Commerce of the Department of the Seine, sitting at Paris, France.

The Bankruptcy Act, § 2 (11 U.S.C.A. § 11), gives courts of bankruptcy jurisdiction to "adjudge persons bankrupt [1] who have had their principal place of business, resided, or had their domicile within their respective territorial jurisdictions for the preceding six months, or the greater portion thereof, [2] or who do not have their principal place of business, reside, or have their domicile within the United States, but have property within their jurisdictions, [3] or who have been adjudged bankrupts by courts of competent jurisdiction without the United States and have property within their jurisdictions." The second amended petition, upon which the order of adjudication was made, purports to set forth the jurisdictional grounds of the second and third clauses of the above-quoted statutory provision. It alleged that the Neideckers do not have their principal place of business, reside, or have their domicile within the United States, but have property within the jurisdiction of the court, and that they have been duly adjudged bankrupts by a court of competent jurisdiction without the United States, namely, in France, on July 23d. The bankrupts' answer denied the former allegation and alleged that since July 25th they have had, and still have, their residence and domicile within the southern district of New York. As to the latter allegation of the petition the answer admitted the entry of a jugement de faillite by the French court but alleged that said court had no jurisdiction and that the supposed judgment was entered without due process as against the alleged bankrupts.

If, as the petitioning creditors contend, the Neideckers did not have their principal place of business, their residence, or their domicile within the United States, the District Court had jurisdiction under

the second clause. On the other hand, if the bankrupts did have their residence and domicile in the Southern District, as they allege, the court had jurisdiction under the third clause, provided they had been adjudged bankrupt by a court of competent jurisdiction in France. This third clause supplements the first; it catches the "floater" who has not had his place of business, residence, or domicile within the district long enough to fall within the first clause, provided he has been adjudged bankrupt abroad and has property here. Hence we need not determine whether the Neideckers were resident and domiciled in Paris or in New York, if the "jugement de faillite" was sufficient. If Paris was the place of residence and domicile, the second clause governs; if New York, the third. The District Court ordered adjudication on the basis of the French judgment.

It is conceded that the "jugement de faillite" was entered in accordance with the French law and procedure and effected a seizure of the appellants' property in France for distribution among their creditors, but it is contended that both substantively and procedurally the proceeding is too different from an adjudication in bankruptcy in our courts to bring the appellants within the description of persons "who have been adjudged bankrupts by courts of competent jurisdiction without the United States." Substantively the French law differs from ours in requiring no act of bankruptcy other than cessation of payment of debts, and in awarding the bankrupt no discharge. But plainly these differences are not vital. Until the reign of Queen Anne there was no release to the debtor in English bankruptcy (1 Remington, Bankruptcy [3d Ed.] 12), and very recently the Supreme Court has held that the inability of a corporation to meet its debts as they mature is an adequate basis for bankruptcy legislation. Continental Bank v. Chicago, Rock Island Ry. Co., 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110. Procedurally the entry of a jugement de faillite differs widely from a bankruptcy proceeding in our courts. Not only may the proceeding be initiated by the bankrupt or by a creditor, but also on the court's own motion ("soit d'office") under urgent circumstances, as when the debtor has absconded. The judgment under consideration was of this type. It was entered ex parte without notice to the bankrupts. After entry the judgment must be published in newspapers and posted in the bankrupt's place of business, and thereafter he may object to the proceedings or may appeal. A judgment in personam based on such procedure might be subject to successful attack if attempted to be enforced in our courts (see Hilton v. Guyot, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95), and the appellants argue as though that were the question before us. It is not. An adjudication in bankruptcy is analogous to a proceeding in rem. Hanover Nat. Bank v. Moyses, 186 U.S. 181, 192, 22 S.Ct. 857, 46 L.Ed. 1113. And the present action in no sense seeks to enforce the French adjudication. The question before us is not whether it is here enforceable but whether it satisfies the condition upon which depended jurisdiction of the District Court. That condition was a bankruptcy adjudication "by a court of competent jurisdiction without the United States," which should be understood to mean a court having jurisdiction according to the laws of any civilized country. Undoubtedly the foreign proceeding must bear enough similarity to our own to be called an adjudication in bankruptcy, but it need not be based upon procedure identical with our own. Any judgment is sufficient by which the debtor's property is seized in accordance with the laws of a civilized country for distribution among his creditors. When that has occurred, the statute authorizes adjudication here if the debtor has property within the territorial jurisdiction of the District Court and has committed an act of bankruptcy. In short, it means that once distribution has begun elsewhere, we will not allow a scramble of creditors to reach property here but will permit the debtor to be adjudicated bankrupt even though he has had no stable abode within the district for the greater part of six months.

Judgment affirmed.